*519 OPINION.
McMahon:
The question here presented is whether the exchange by petitioner of 9807 shares of stock in the Huntington Beach Co. for 3269 shares of Standard Oil Company of California stock was effected in 1922 or whether it was effected in 1923. The only year before us is the year 1923. The respondent held that the exchange took place in 1923 and included a profit in petitioner’s gross income for that year, resulting in the deficiency in question. If the transaction was consummated in 1923, any resulting gain must be recognized since the transaction is not one in which gain or loss is not recognized under the provisions of section 202 (c) (1) of the Revenue Act of 1921, as amended by the Act of March 4, 1923, effective January 1,1923. That section, as amended, provides:
(c) For tbe purposes of tills title, on an exchange of property, real, personal, or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—
(1) When any such property held for investment or for productive use in trade or business (not including stock-in-trade or other property held primarily, for sale, and in the case of property held for investment not including stock, bonds, notes, dioses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest), is exchanged for property of a like kind or use.
The respondent also included in petitioner’s gross income for the year 1923 one-fifth of the profit upon the sale by petitioner of 40,193 shares of Huntington Beach Company stock to the Standard *520 Oil Company of California. The purchase price was to be paid to petitioner in deferred payments, the first of which was bo be paid in 1923. No question is raised by the petitioner as to this action of respondent.
The evidence discloses that on December 12, 1922, die petitioner entered into an agreement with the Standard Oil Company of California to sell to that company 50,000 shares of Huntington Beach Company stock. However, the next day it was orally agreed between Clayton, petitioner’s representative, and representatives of the Standard Oil Company of California, that Standard Oil Company of California would transfer as much of its stock as it had available to petitioner in exchange for Huntington Beach Company stock upon the basis of three shares of Huntington Beach Company stock for one share of Standard Oil Company of California stock, and would purchase the balance of petitioner’s Huntington Beach Company stock. However, on December 13, 1922, pursuant to the oral agreement, Clayton, who was also acting for Florence M. Gates, sent a night letter to the escrow agent advising him of the oral modification of the contract in the following terms:
Modified agreement only permits trust to get shares in exchange for first payment therefore hold check for Two Hundred thousand first payment coming to Florence M. Gates trust for return to makers for exchange for their shares after January first without putting- same through anybodys set of books also agreed with Blankenhorn to defer receipt of his commission which Florence will pay him in cash outside of this transaction. [Italics supplied.)
From this we can not escape the conclusion that the parties intended that the exchange should take place af ter January 1, Í923. On the whole the remainder of the evidence tends to support this view. We therefore conclude that the exchange of Huntington Beach Company stock for stock of the Standard Oil Company of California took place in 1923 and that the profit derived by petitioner upon the exchange was income in that year. Upon the whole evidence we are satisfied that no income was received by the petitioner in 1922 as a result of this exchange.
At the hearing the respondent wras allowed to amend his answer to affirmatively allege that the deficiency for the year 1923 should be increased by disallowing the deduction of $25,000 broker’s fees which petitioner paid to Blankenhorn for negotiating the transaction, and which respondent had allowed in computing the deficiency in question. The evidence discloses that the fee was paid in 1922 for services for Blankenhorn in disposing of all of petitioner’s 50,000 shares of Huntington Beach Company stock, and it is respondent’s contention that the full amount should have been deducted in 1922. We do not agree with the respondent. Petitioner *521 was not in the business of dealing in securities and this fee did not constitute an ordinary and necessary business expense which is deductible from income of the year in which the expenditure is made. The $25,000 broker’s fee operated to reduce the profit which petitioner derived upon the disposition of the entire 50,000 shares of Huntington Beach Company stock. See Frank Cavanaugh, 19 B. T. A. 1251, and Mrs. E. A. Giffin, 19 B. T. A. 1243. This fee should be allocated between the two transactions (the sale of 40,193 shares of Huntington Beach Company stock and the exchange of 9,807 shares of Huntington Beach Company stock for other stock) in proportion to the amount of stock disposed of by petitioner in each transaction. Thus $4,903.50 of the fee will reduce the profit derived by petitioner in 1923 upon the exchange of Huntington Beach Company stock for Standard Oil Company of California stock. The remainder of the fee, $20,096.50, will reduce the profit derived by petitioner upon the sale of the 40,193 shares of Huntington Beach Company stock. This reduction of profit upon the sale of 40,193 shares will thus be reflected proportionately in each instalment payment made, including that made to petitioner in the year 1923 which is before us. Adjustments will be made under Bule 50 in conformity with the above.
Beviewed by the Board.

Judgment will be entered under Bule 50.